FreemaN, J.,
delivered the opinion of the Court.
The only question we think proper to consider in this case is the validity of the sale by Kortreeht, Trustee, to Porter, Trustee for Mrs. Page. The property in question had been conveyed by Meath to Kor-trecht, as Trustee, in March, 1866, to secure a note of $4,000, given by Meath to Franciola & Williamson, said note made in compromise of a disputed claim to the property, on the part of Franciola, under a former purchase from one Shanks, who had sold it as trustee.
The main ground on which this sale and conveyance by Korlreeht is attacked is, that the sale was made for a grossly inadequate price in the absence of Meath from the city, the bill charging that the property is worth, and was worth at the time of the sale in February, 1867, $35,000. Meath charges in his bill that he was absent from the city of Memphis— detained by unlooked-for circumstances — at the time of the sale; that he did not know the sale of the property had been advertised, or that it had been offered for sale, until after it had been sold; that he left the city before the advertisement was put in the newspaper.
Meath is in possession of the property, and files this bill, quia timet, because of anticipated danger of being disturbed in his possession by Page and wife, or Porter, the Trustee of the wife. The sale was *226 made on the 2d of February, 1867, and this bill filed the 11th of same month. The complainant also, it may be added, brings into court and makes a tender of the $4,500, the amount paid for the property by Page. The proof shows the property to be a lot, 82-| feet, fronting on Beal street, in Memphis, with 22^ feet of it covered by a brick tenement building, perhaps .four stories high, with a basement. We have examined carefully the proof as to its value at the time of the sale, and find as follows: Mon-serratt, a real estate agent in the city of Memphis, puts its value at from $19,000 to $20,000; Littleton, an insurance agent, at from $18,000 to $20,000; McCall, another insurance agent, says it is worth, at date of sale, in cash, $15,000; Davis, a banker and business man, says, in 1869 it was worth $12,000 or $13,000 — not quite so much in 1867; Church, who seems to be a dealer in real estate, says it was worth from $10,000 to $15,000; Dent, a real estate agent, values the 61 feet of vacant ground, exclusive of the house, as we understand him, at $7,500. ' We think, weighing this proof fairly, the property was worth from $15,000 to $16,000, perhaps more, at the date of sale. The parties paid $4,500, so that it was purchased at about one-fourth of its value.
It is difficult, from the loose statements of judges, to say how far inadequacy of price shall be deemed evidence, in a court of equity, of fraud or undue advantage, and thus furnish a ground for rescission of' a contract.
It is laid down generally that there is no case *227 where mere inadequacy of price, independent of other circumstances, has been held sufficient to set aside a sale made between parties standing on equal ground, and dealing with each other without any imposition or oppression. 1 L. C. Eq., 590, Osgood v. Franklin; 2 John., 23. Yet it is laid down with equal certainty in the authorities that an inequality between the price given and the real value of the property, so strong and manifest as to shock, the conscience and confound the judgment of any man of common sense, would amount to fraud, for which a court of equity will relieve. See 1 L. C. Eq., 590. While this last statement of the rule is frequently quoted in our books and by judges, yet it evidently furnishes no practical guide for the decision of the question, as what may shock the conscience of one man, may entirely fail of making the same impression on another. The statement of the rule by Lord Thurlow, in Gwynne v. Heaton, 1 Bro. Ch. Cases, 9, is, that “to set aside a conveyance, there must be an inequality so strong, gross, and manifest, that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it, expresses the idea on which courts of equity go in such cases, perhaps about as well as any of the dieta on the subject. Yet he acknowledges the looseness of the statement as a principle, and the difficulty in its practical application in the administration of justice in courts. In the case of Herne v. Meers, 1 Vernon, 465, cited and approved by our own court in Wright v. Wilson, 2 Yer., 296, the conveyance was set aside, *228 or held as a mortgage for security of money advanced, when the inequality in the consideration was only one-half the value of the property. This, in connection, perhaps, with the circumstances of the party, giving advantage to the purchaser, was deemed sufficient ground for a court of equity to interpose. Perhaps it would be improper to lay down any general rule on the subject, but let every case stand on its own ground. From the cases it can be clearly gathered, however, that, courts, in eases of gross inadequacy of price and great hardship, readily seize upon any circumstances of surprise or undue advantage, or other inequitable circumstance, and bring it in aid of relief against such contracts.
Guided by the principle of these cases, together with the other general principle that a court of equity will watch over the administration and execution of a trust, and see that the interest of all parties is protected, as far as it can be done consistent with the rules of law and of equity, and fairness to all concerned. We think the conveyance in this case can not be sustained. While there is not the slightest imputation on the good faith of the trustee in this case, yet he was trustee for the complainant in this case as well as for the beneficiary in the deed. He had been made the agent of the complainant for the sale of this property, and also for Franciola, in the proper appropriation of .the fund arising from the sale to his debt. Under such circumstances it is but fair to charge the trustee with some responsibility in seeing that the property shall be sold under such cir *229 •cumstances as shall make it bring the best price possible. At any rate, the fact that the party was absent without fault at the time of the sale, taken in connection with such gross inadequacy of price as is found here, furnishes a good ground on which to set it aside and order a new sale of the property in execution of the trust. There has been no delay or acquiescence in this case, the bill being filed in a few days after the sale was made. All parties can be placed in statu quo, the purchaser receive his money, and the beneficiary in trust have his debt paid, and, as appears in the proof, a large and valuable estate, which has been sacrificed under untoward circumstances, "be saved, perhaps, to complainant. It is proper to say that the case, in the aspect we have considered it, does not raise the question of an innocent purchaser for a valuable consideration, on' which the Chancellor made his decree.
The sale will be set aside, the property be sold by the Clerk of this court, the property to be started at the price bid by the former purchaser, he having the benefit of that bid, and proceeds applied to payment of the debt secured, and balance to Meath, the complainant.
Meath will pay the costs of this court and the court below, or the same will be taken out of the fund, if any surplus, after paying the debt.
The property will be sold for cash, to the extent of the debt secured, balance on twelve months’ time; the equity of redemption being waived in the deed, will be barred.